UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GARY STEFFEN,                                    )
                                                 )
                        Plaintiff,               )        08 C 3935
                                                 )
            vs.                                  )        Judge Feinerman
                                                 )
CAROLYN W. COLVIN, Commissioner of Social        )
Security,                                        )
                                                 )
                        Defendant.               )

<u>**MEMORANDUM OPINION AND ORDER**</u>

Gary Steffen filed a claim for disability insurance benefits ("DIB") with the Social

Security Administration in March 2006, alleging that he had become disabled on January 6,

2006.  The Commissioner denied the claim and then denied Steffen's request for reconsideration.

Steffen sought and received a hearing before an administrative law judge ("ALJ") pursuant to 20

C.F.R. § 404.914.  The ALJ denied the claim, and the Social Security Appeals Council denied

Steffen's request for review of the ALJ's decision, making the ALJ's decision the final decision

of the Commissioner.  *See Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).  Steffen

timely filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the

Commissioner's final decision.  After numerous extensions of time, the parties filed cross-

motions for summary judgment.  Docs. 28, 35.  For the following reasons, Steffen's motion is

granted, the Commissioner's motion is denied, and the case is remanded to the Commissioner

for further proceedings.

**Background**

The following facts are taken from the administrative record.

## A.     Factual Background

Steffen was 45 years old when he allegedly became disabled.  He has a high school education and obtained an associates degree.  Steffen's DIB application states that he worked as a plumber from 2003 until January 6, 2006.  At points during the following year, he held part-time work cleaning and maintaining injection molds for plastic parts; he claims that he can no longer perform that job due to exertion limitations and his inability to perform properly while on pain medication.  From 1984 to 2002, Steffen ran his own business, working as a machinist; in that job, he performed grinding, milling, computer-aided design, and various management and administrative tasks associated with running the business.

Steffen's DIB application claims that he is unable to work due to "[f]ibromyalgia, hypertension, [a] speech impediment, [and] foot problems."  In his brief before this court, Steffen claims to have other impairments, including left medial plantar fasciitis associated with pain and edema, degenerative disc disease, disk protrusion at L4-L5 and sciatica associated with lower back pain, headache with blurred vision, comminuted fracture of the distal radius, bony fragments in his right elbow, a history of peptic ulcer, left ear tinnitus, acute bronchitis with hilar density, severe depression, dysthymia with flat affect, and chronic fatigue with insomnia.

Steffen's treating physician, Dr. Walter E. Gasser, has treated Steffen for fibromyalgia since 1974.  In a June 12, 2006, letter to the Illinois Department of Human Services, Dr. Gasser observed that Steffen started in 1988 to experience chronic musculoskeletal pain and muscle tension headaches.  As a result, Steffen has been prescribed various medications, including Darvon Compound, Valium, Doxepin, Elavil, Hydrocodone, and Paxil to alleviate his generalized pain.  Dr. Gasser's letter describes Steffen's fibromyalgia as "by far the most severe

case … that you will ever see." He opined that a person with severe fibromyalgia cannot sit for

longer than 15 to 20 minutes and that Steffen was permanently disabled and unable to work. Dr.

Gasser consistently noted fibromyalgia among his diagnoses throughout their consultations.

On January 11, 2006, Steffen underwent a left endoscopic plantar fasciotomy in an

attempt to alleviate his left heel pain. A report dated March 21, 2006 indicates that Steffen

experienced considerable improvement and was able to exercise as a result of the surgery. On

May 2, 2006, Dr. Gasser observed that Steffen was suffering from insomnia, headaches, and

dysthymic disorder. "Dysthymia is a chronic type of depression in which a person's moods are

regularly low. However, symptoms are not as severe as with major depression." Nat'l Institute

of Health, U.S. Nat'l Library of Medicine, "Dysthymia,"

www.nlm.nih.gov/medlineplus/ency/article/000918.htm (last visited May 21, 2013). At the May

2 appointment, Steffen rated his pain as a five on a scale of one to ten.

Steffen also suffers from hypertension and has been prescribed medications to control his

blood pressure. He has had a stutter since childhood.

Steffen had a neurological consultation with Dr. Safwan Barakat on August 22, 2006.

Dr. Barakat observed that Steffen had lower back pain and left leg pain for approximately two

months prior to the evaluation. The pain was identified as sciatica, and Dr. Barakat noted that

bending, stooping, coughing, sneezing, and sitting seemed to aggravate Steffen's symptoms. Dr.

Barakat further observed that an MRI indicated a herniated disc L4-5 to the left of the midline

with elements of spinal stenosis. Dr. Barakat observed a limited range of motion on a straight-

leg raise test and decreased sensation in Steffen's left foot. Dr. Barakat performed several

follow-up examinations over the following months, ultimately leading to physical therapy and

epidural steroid injections; the treatments alleviated Steffen's symptoms somewhat, but he still complained of pain. Progress notes during this period of time reflect continued pain but indicate that Steffen's gait, balance, and musculoskeletal strength were all within normal limits.

At the direction of a doctor from Disability Determination Services ("DDS"), Steffen underwent a consultative internal examination by Dr. Roopa Karri. Dr. Karri examined Steffen and reviewed his medical records. She observed that his gait was normal with no limp, and that his grip strength and range of motion were normal. Dr. Karri also noted generalized pain practically everywhere Steffen was touched, along with tenderness on 16 of the 18 tender points used to diagnose fibromyalgia. Dr. Karri observed no signs of depression, agitation, or anxiety. Her report identified four problems: (1) a history of severe fibromyalgia with tenderness all over the body; (2) hypertension and hypercholesterolemia; (3) a history of right elbow pain of unclear etiology with decreased range of motion; and (4) a history of stuttering, with the observation that Steffen stuttered on and off during the examination but "was completely understandable."

## B. The Administrative Hearing

The ALJ held a hearing at which Steffen and Thomas Dunleavy, a vocational expert ("VE"), testified.

Steffen testified as follows. He takes pain medication daily, and while the medication is helpful, it merely "takes the edge off" the pain without completely alleviating it. Steffen does not think as clearly when on pain medication. He is capable of walking "maybe across the hall" without pain medication, but with such medication he can walk up to three-and-a-half to four miles. Steffen experiences pain while exercising. Sitting for an hour or more also causes pain, requiring that he get up and move around. He often wakes up during the night due to pain.

Steffen needs to lie down for a period of time every day. The severity of his pain fluctuated, and at its worst prevented him from exercising for a week or two at a time.

Steffen further testified that he could lift up to 50 pounds while using pain medication, but that doing so would cause discomfort and pain. It is difficult for him to climb stairs, bend, stoop, crouch, crawl or kneel. Steffen also experiences difficulties in personal care; he needs his wife's assistance to wash his back and button the top buttons of his shirt. Steffen rarely cooks or does the grocery shopping, but he drives with some discomfort on a fairly regular basis. Steffen does not do much laundry or cleaning, but does some yard work, mows the lawn with a self-propelled lawnmower, and takes out the garbage. On an ordinary day, Steffen reads the newspaper and does a Sudoku puzzle while waiting for his pain medication to kick in. When he feels good enough to exercise, he does so, usually by walking around the neighborhood.

Steffen also testified that he and his son took a train trip to Colorado during the prior year and that the trip was greatly uncomfortable. While in Colorado, Steffen attempted to snowboard for about an hour every day for three or four days. While at home, Steffen occasionally tries to shoot baskets with his son. He socializes with friends and family and attends church regularly. Steffen has struggled with a stutter for his entire life, which presents difficulties when on the phone, in social activities, and occasionally at jobs.

When asked about Dr. Gasser's diagnosis that Steffen had a dysthymic disorder, Steffen indicated that he did not "consider myself depressed," but was merely trying to cope with the fact that he was unable to work. He never sought the services of a psychiatrist, and his doctor had never suggested that he see one.

The VE testified regarding Steffen's previous work and his prospects for other work in the Chicago metropolitan area. VE testimony helps to determine "whether [the claimant's] work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e). At a hearing, a VE may "respon[d] to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

The VE opined that Steffen's previous work as a plumber was unskilled with a heavy level of exertion, that his part-time job cleaning molds was unskilled work with a medium level of exertion, and that his experience running a business and working as a machinist was skilled work requiring a medium level of exertion. The VE estimated that there were potentially 1,000 to 1,500 jobs involving light or sedentary work that would utilize Steffen's skills, including working in computer-aided design.

The ALJ then asked the VE a series of hypothetical questions. The first asked what sort of and how many jobs were available in the Chicago metropolitan area for an individual of Steffen's age, with his education and work experience, who was limited to light work. The VE estimated that there would be at least 10,000 cashier jobs, at least 15,000 assembler jobs, and nearly 7,000 packager jobs within the area. The ALJ then refined the hypothetical, asking about the availability to such a person of sedentary work with an option to sit or stand at will. The VE estimated that there were approximately 3,000 cashier jobs, 4,000 assembler jobs, and 3,000

sorter or inspector jobs. With the additional hypothetical limitation that the worker could have only occasional contact with the public, the VE excluded the cashier jobs from the pool.

Steffen's counsel then asked the VE how the availability of jobs would be affected if the individual suffered from frequent loss of work as well as the need for frequent long rest periods, from one-third to two-thirds of the time. The VE replied that it would preclude the individual from holding any of the jobs that he had mentioned.

### C. The Commissioner's Decision

The ALJ issued a decision finding that Steffen was not disabled and was therefore not eligible for DIB. The ALJ followed the "five-step sequential evaluation process" for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). The five steps are as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments [in 20 C.F.R. § 404, subpart P, app. 1] that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011) (internal quotation marks omitted); *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). RFC "is defined as 'the most [the claimant] can still do despite [his] limitations.'" *Weatherbee*, 649 F.3d at 569 n.2 (alterations in original) (quoting 20 C.F.R. §§ 404.1545(a), 416.945(a)). "A finding of disability requires an

-7-

affirmative answer at either step three or step five. The claimant bears the burden of proof at

steps one through four, after which at step five the burden shifts to the Commissioner." *Briscoe*

*ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). At the fifth step, the government

"must present evidence establishing that the claimant possesses the [RFC] to perform work that

exists in a significant quantity in the national economy." *Weatherbee*, 649 F.3d at 569 (footnote

omitted).

Here, the ALJ determined at step one that Steffen had engaged in "substantial gainful

activity" but stopped doing so in January 2006. At step two, the ALJ determined that Steffen

suffers from a "severe impairment," fibromyalgia. The ALJ rejected Steffen's submission that

his hypertension constituted a severe impairment, noting that there was no evidence that Steffen

had suffered end-organ damage as a result of hypertension and that the evidence showed Steffen

to be non-compliant with his blood pressure medication. The ALJ also found that Steffen's

speech impediment did not constitute a severe impairment, noting that Dr. Karri had determined

that his speech was totally understandable; the ALJ further noted, based on observing Steffen's

testimony and that fact that he previously was able to work and attend school, that Steffen was

able to socially interact with others. Finally, the ALJ found that although Dr. Gasser had

diagnosed Steffen with dysthymic disorder, Steffen showed no signs of depression in subsequent

examination, and no corroborating evidence indicated that he suffered any limitations in his

activities of daily living, social functioning, or concentration, persistence, or pace, or any

episodes of decompensation. At step three, the ALJ concluded that Steffen's fibromyalgia did

not meet or equal any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Steffen had the RFC to perform unskilled sedentary work, provided that he was able to change positions and sit or stand at will. In so finding, the ALJ recited much of the medical evidence noted above, including evidence of Steffen's range of motion and grip strength; his self-assessed rating of his pain as a five on a scale one to ten; Dr. Karri's assessment of his ability to speak; Steffen's and his doctor's assessment of his lack of depression and anxiety; and various treatments Steffen had undergone for his heel and back pain. After discussing this evidence, the ALJ concluded:

> Neither the weight of the documentary evidence nor claimant's own testimony support the opinion from claimant's treating physician on June 12, 2006 that the claimant is incapable of working. The objective physical examination results reported in the claimant's medical record have been largely unremarkable. Range of motion, strength and neurological testing have, for the most part, been within normal range. Claimant also testified to being capable of performing a fairly broad range of activities of daily living including: exercising, driving, attending church and taking a trip to Colorado. Testimony also revealed that he is able to fully sustain the requisite attention and concentration to do such tasks as reading a newspaper. Allowing, however, for the fact that fibromyalgia diagnosis is not an objectively concise one and allowing for claimant's potentially legitimate need for frequent position changes, there is nothing to show that claimant is precluded from unskilled sedentary exertional level work allowing for an opportunity to sit or stand at will.

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

Based on this assessment of Steffen's RFC, the ALJ concluded that Steffen was unable to perform any past relevant work, given that working as a machinist and plumber involves medium or heavy exertion, falling outside of his RFC.

Finally, at step five, the ALJ concluded that Steffen was capable of performing other jobs available in substantial numbers in the Chicago metropolitan area. In particular, based on the VE's testimony, the ALJ found that jobs in representative occupations such as cashier, assembler, and sorter/inspector were available for persons of Steffen's age, education, work experience and with an RFC allowing unskilled sedentary work with an option to sit or stand at will. Therefore, the ALJ found Steffen not to be disabled and declared him ineligible for DIB.

### Discussion

A claimant is disabled under the Social Security Act if he or she is unable to perform "any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant has the burden of showing that his impairments prevent him from performing prior employment and any other job generally available in the national economy. 42 U.S.C. § 423(d)(2)(A). As noted above, because the Social Security Appeals Council declined to review the ALJ's decision that Steffen was not disabled, the ALJ's decision became the Commissioner's final decision.

Section 405 of the Act authorizes judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 405(g). The court reviews the Commissioner's legal determinations *de novo* and the factual findings deferentially, affirming those findings so long as they are supported by substantial evidence. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence means "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion"; it "must be more than a

scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.

2007) (internal quotation marks omitted). If the reviewing court finds that the Commissioner's

decision is not supported by substantial evidence, "a remand for further proceedings is [usually]

the appropriate remedy." *Briscoe*, 425 F.3d at 355. Moreover, the court "cannot uphold an

administrative decision that fails to mention highly pertinent evidence," *Parker v. Astrue*, 597

F.3d 920, 921 (7th Cir. 2010), or a decision containing errors of law, *Schmidt v. Astrue*, 496 F.3d

833, 841 (7th Cir. 2007).

In addition to satisfying these standards, the Commissioner's opinion must build an

"accurate and logical bridge from the evidence to [the] conclusion so that [the] reviewing court[]

may assess the validity of the agency's ultimate findings and afford a claimant meaningful

judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (internal quotation

marks omitted); *accord Briscoe*, 425 F.3d at 351 ("In addition to relying on substantial evidence,

the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit

meaningful appellate review."); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (holding

that the Commissioner must "articulate at some minimal level [his] analysis of the evidence to

permit an informed review") (internal quotation marks omitted). To build a logical bridge, the

Commissioner must "sufficiently articulate his assessment of the evidence to assure [the court]

that he considered the important evidence and to enable [the court] to trace the path of his

reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation marks

omitted). The court "cannot uphold a decision by an administrative agency … if, while there is

enough evidence in the record to support the decision, the reasons given by the trier of fact do

not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Steffen challenges the conclusions reached by the ALJ's opinion at steps two, three, four, and five. The court agrees with Steffen with respect to steps two and four, as the ALJ's opinion at those steps does not adequately connect its conclusions to the evidence in the record.

### A.    Step Two: Severe Impairment

Steffen of course does not challenge the ALJ's finding that he has fibromyalgia and that fibromyalgia constitutes a severe impairment. But Steffen faults the ALJ for concluding that his other ailments are not severe impairments. "A severe impairment is an impairment or combination of impairments that 'significantly limits [one's] physical or mental ability to do basic work activities.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting 20 C.F.R. § 404.1520(c)) (alteration in original). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs," including: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

Although substantial evidence supports the ALJ's conclusion with respect to the three individual non-fibromyalgia impairments (hypertension, a speech impediment, and foot problems) listed in Steffen's DIB application, the ALJ's opinion does not sufficiently consider all of the listed impairments in combination, as Social Security regulations required it to do. *See* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or

-12-

impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."). In particular, the ALJ's opinion does not evaluate whether the other impairments "exacerbat[ed] the problems created" by Steffen's fibromyalgia. *Parker*, 597 F.3d at 923; *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000).

The opinion's "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error." *Parker*, 597 F.3d at 923. The ALJ might have concluded, based on the record evidence, that no combination of Steffen's fibromyalgia with his other impairments constitutes a severe impairment independent of fibromyalgia. But no evaluation of this question was made, warranting a remand. *See Terry*, 580 F.3d at 477 ("Some of Terry's other arguments warrant remand as well. … [T]he ALJ's opinion does not even mention Terry's pelvic floor and urinary disorders, impairments that must be considered to determine whether an applicant is disabled. Although these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, we have frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Golembiewski has a host of significant medical conditions, including the partially amputated leg, epilepsy, back pain,

-13-

bowel and bladder dysfunction, and grasping problems that we have discussed. Having found that one or more of Golembiewski's impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe. On remand the agency must remember that a competent evaluation of Golembiewski's application depends on the total effect of all his medical problems.") (citations omitted); *Green*, 204 F.3d at 782 (remanding because "[e]ven if the shortness of breath and the chest pain were not in themselves enough to disable Green from doing medium work, the combination of these conditions together with his arthritis and swollen leg may have been").

For the sake of completeness, the court notes that Steffen's other step two challenges are without merit. Steffen faults the ALJ for not considering several of his alleged impairments, including right elbow problems, blurred vision, peptic ulcer, and spinal disc desiccation protrusion. In his DIB application and at the hearing, however, Steffen did not press any of those impairments. The ALJ "is entitled to assume that the applicant is making his strongest case for benefits," *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987), and potential impairments must be presented either in the application or at the hearing. *See Brihn v. Astrue*, 332 F. App'x 329, 332-33 (7th Cir. 2009). The ALJ was not obligated to address those additional impairments.

Steffen also contends that no evidence supports the ALJ's conclusions that he was non-compliant with his blood pressure medication and that no end-organ damage had occurred as a result of his hypertension. Steffen is wrong; the ALJ referenced medical reports indicating that Steffen was not taking his prescribed blood pressure medication and that his organ function appeared normal. Steffen next maintains that the ALJ incorrectly concluded that his stuttering,

standing alone, was not a severe impairment. But the ALJ relied on medical reports indicating that although Steffen stutters, he is completely understandable. The ALJ was entitled to credit this evidence, particularly given that no other medical evidence indicated that Steffen could not be understood; the ALJ also was entitled to observe that Steffen's speech impediment posed no difficulty at the hearing and that it had not interfered with his other life activities.

Steffen further contends that the ALJ failed to consider his dysthymia and depression using the "special technique" set forth in 20 C.F.R. § 404.1520a, under which an ALJ considers a claimant's limitations in: (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, or pace, and ranks them on a five-point scale ranging from none, mild, moderate, marked, and extreme, after which the ALJ is to enumerate any episodes of decompensation. Contrary to Steffen's submission, the ALJ followed this procedure. The ALJ noted that while Dr. Gasser opined in May 2006 that Steffen had dysthymia, Dr. Karri's May 2006 report indicated that he showed no signs of depression. The ALJ further noted that any mental difficulties suffered by Steffen caused no limitation in his daily living, social functioning, or concentration, persistence, or pace, and that he had experienced no episodes of decompensation. The ALJ's opinion followed the special technique and supported its conclusion with substantial evidence.

### B. Step Four: The RFC Determination

The ALJ determined that Steffen has an RFC permitting him to perform unskilled sedentary work, provided that he have the option to move about and sit or stand at will. Although Steffen does not contest the ALJ's conclusion that his RFC does not allow him to perform his past work, which requires medium to heavy exertion, he argues that the RFC finding

is erroneous because he is not capable of working at all. A review of the ALJ's opinion reveals that its RFC analysis does not build "an accurate and logical bridge" between the evidence and its conclusions. *Young*, 362 F.3d at 1002 (internal quotation marks omitted). This, too, requires a remand.

The ALJ's opinion does not adequately consider Steffen's subjective experience of pain and Dr. Gasser's opinion that the pain that Steffen experiences from fibromyalgia makes it impossible for him to work. Precedent holds that where the subjective experience of pain does not correspond with objective medical indicators regarding the pain, the ALJ must make a credibility determination regarding claimant's description of his symptoms, and that if the ALJ rejects the claimant's description of his symptoms, the opinion must articulate specific reasons for doing so. *See Parker*, 597 F.3d at 921-23; *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009); *Ribaudo v. Barnhart*, 458 F.3d 580, 584-85 (7th Cir. 2006); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003). True, an ALJ's credibility determination is "entitled to special deference because the ALJ is in a better position than the reviewing court to observe a witness." *Briscoe*, 425 F.3d at 354. It is also true that a reviewing court may "overturn a credibility determination only if it is patently wrong," *Craft*, 539 F.3d at 678, or if the ALJ fails to "justif[y] her conclusions with reasons that are supported by the record." *Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010); *see also Villano*, 556 F.3d at 562. To build the required logical bridge for a credibility determination, however, the ALJ must consider not only the objective medical evidence, but also the claimant's daily activity; the duration, frequency, and intensity of pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; and functional restrictions. SSR 96-7p, 1996 WL

-16-

374186, at *3 (July 2, 1996); *accord Villano*, 556 F.3d at 562-63 (requiring an analysis of the

factors listed in SSR 96-7p as part of building a logical bridge for credibility determinations).

Moreover, "[u]nder Social Security Ruling 96-7p, an ALJ's evaluation of a[n] applicant's

credibility must be specific enough to make clear to [the court] how much weight the ALJ gave

to the applicant's testimony and the reasons for that decision." *Hill v. Astrue*, 295 F. App'x 77,

81 (7th Cir. 2008); *see also Terry*, 580 F.3d at 477 ("[T]he ALJ must consider the claimant's

level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c),

and must justify the credibility finding with specific reasons supported by the record.").

The ALJ's opinion offers inadequate support for its credibility determination. As noted

above, the opinion states:

> After considering the evidence of record, the undersigned finds the
> claimant's medically determinable impairment could reasonably be
> expected to produce the alleged symptoms, but that the claimant's
> statements concerning the intensity, persistence and limiting effects of these
> symptoms are not entirely credible.

The Seventh Circuit has held that this "not entirely credible" language "is not only boilerplate; it

is meaningless boilerplate" because it "yields no clue to what weight the trier of fact gave the

testimony." *Parker*, 597 F.3d at 922; *see Chase v. Astrue*, 458 F. App'x 553, 558 (7th Cir. 2012)

(holding that the ALJ's "fail[ure] to specify which statements are or are not credible … leaves us

with no basis to review" the ALJ's credibility and RFC determinations); *Martinez v. Astrue*, 630

F.3d 693, 696 (7th Cir. 2011) (the ALJ's finding that the claimant's testimony was "not entirely

credible" provides "no explanation of which of [the claimant's] statements are not entirely

credible or how credible or noncredible any of them are").

The Commissioner's brief argues that the ALJ's credibility assessment was appropriate because it followed immediately from a recitation of medical evidence indicating that Steffen has a normal range of motion, strength, and gait, and of Steffen's own statements that he can perform numerous ordinary daily activities. But a recitation of facts in close proximity to conclusions leaves it unclear what weight the facts were given and what conclusions they support, and thus does not constitute the "accurate and logical bridge" between evidence and conclusions necessary for the court to properly review an RFC determination. *See Young*, 362 F.3d at 1002; *Parker*, 597 F.3d at 922. Indeed, the ALJ's opinion recited the same evidence immediately before its conclusion that Steffen's fibromyalgia would limit his RFC to jobs permitting him to sit or stand at will. Without an explication of the ALJ's thought process, the court cannot determine whether the summary of the medical evidence and Steffen's daily activities was meant to support the necessity of postural changes, the credibility determination, neither, or both. Nothing in the ALJ's opinion connects the facts regarding the medical evidence to the conclusion that Steffen's statements about the "intensity, persistence and limiting effects of these symptoms" were "not entirely credible." Furthermore, the opinion does not say which symptoms Steffen had inaccurately described. Even if the court assumed that the ALJ discredited Steffen's testimony about the intensity of his pain, a reasoned connection to the facts supporting the adverse credibility determination was necessary, as "an ALJ may not discredit testimony of pain solely because there is no objective medical evidence to support it." *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *see* 20 C.F.R. § 404.1529(c)(2); *Goble v. Astrue*, 385 F. App'x 588, 592 (7th Cir. 2010) (citing cases); *Parker*, 597 F.3d at 922 ("the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to

determine what is causing her pain that she is faking it"); *Scheck*, 357 F.3d at 703 (holding that

the absence of an "objective medical basis" is just one factor among many in determining

whether a claimant's testimony regarding pain is credible); *Sarchet v. Chater*, 78 F.3d 305, 307

(7th Cir. 1996) (noting that fibromyalgia is not susceptible to "objective clinical tests").  Without

some explanation that connects the evidence to the ALJ's conclusion, the basis for the adverse

credibility determination is unclear and unreviewable.

The Commissioner's brief also contends that the adverse credibility determination could

be supported by the fact that Steffen had personally assessed his own pain as being a five on a

scale of one to ten during his May 2006 appointment with Dr. Gasser.  This fact, the brief

asserts, was "indicative of some limitations, but not completely disabling pain."  Doc. 36 at 12.

The argument seems reasonable, but it cannot be considered here because the ALJ did not offer

the argument as a basis for rejecting Steffen's assessment of his pain.  Settled law holds that the

court's review is limited to the reasons and logical bridges articulated in the ALJ's decision, and

may not consider the post-hoc rationales submitted in the Commissioner's brief.  *See SEC v.

Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013);

*Martinez*, 630 F.3d at 694; *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (holding that "a

persuasive brief [cannot] substitute for" the ALJ's deficient opinion); *Larson v. Astrue*, 615 F.3d

744, 749 (7th Cir. 2010).

Another problem with the opinion's RFC determination is that it does not adequately

explain why the ALJ discounted Dr. Gasser's opinion that Steffen was permanently disabled and

unable to work.  Generally, the ALJ must give "controlling weight" to the medical opinion of a

treating physician "if it is 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence.'" *Larson*, 615 F.3d

at 749 (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Roddy*, 705 F.3d at 636; *Scott*, 647 F.3d

734, 739 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). An ALJ must

offer "good reasons" for discounting a treating physician's opinion. *Larson*, 615 F.3d at 749

(internal quotation marks omitted). Put another way, "[e]ven though the ALJ was not required to

give Dr. [Gasser's] opinion controlling weight, [the ALJ] was required to provide a sound

explanation to reject it." *Roddy*, 705 F.3d at 636 (citations omitted).

The ALJ's opinion does discuss some portions of the medical record in concluding that

"[n]either the weight of the documentary evidence nor claimant's own testimony" supported Dr.

Gasser's opinion that Steffen was incapable of working. But the opinion does not indicate what

weight, if any, was afforded Dr. Gasser's opinion. *See Larson*, 615 F.3d at 751 ("Even if the

ALJ had articulated good reasons for rejecting [the treating physician's] opinion, it still would

have been necessary to determine what weight his opinion was due under the applicable

regulations.") (citing 20 C.F.R. § 404.1527(c)(2)). The opinion's rationale is "merely recitation

of information contained in [Steffen's] medical records," and does not articulate the relative

weight given to Dr. Gasser's opinion and that of the doctors who found Steffen to have normal

capabilities. *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008). The ALJ is obligated to at least

"minimally articulate [the] reasons" for discounting a treating physician's medical opinion, and

must identify the inconsistencies relied upon in discrediting such opinion. *See Clifford v. Apfel*,

227 F.3d 863, 870-71 (7th Cir. 2000). That was not done here.

To summarize, the ALJ's RFC determination does not "enable [the court] to trace the

path of [its] reasoning," *Hickman*, 187 F.3d at 689 (internal quotation marks omitted), and thus

fails to provide a logical bridge between the evidence and the RFC conclusion. *See Scott*, 647 F.3d at 740 (finding no logical bridge where the ALJ did not "explain how she reached her conclusions about Scott's physical abilities" in the face of conflicting medical evidence); *Craft*, 539 F.3d at 677-78 (finding no logical bridge "between the ALJ's recitation of [the claimant's] medical evidence and the" RFC finding, where the ALJ recited much of the evidence "without a determination of weight"); *see also Martinez*, 630 F.3d at 696-97; *Briscoe*, 425 F.3d at 352; *Hickman*, 187 F.3d at 689. Seventh Circuit precedent consistently holds that such decisions cannot stand and must be remanded for further consideration. *See Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012); *Scott*, 647 F.3d at 740; *Martinez*, 630 F.3d at 697-99.

### Conclusion

For the foregoing reasons, the court grants Steffen's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands the case to the Commissioner for further review consistent with this opinion.

May 23, 2013

_____

United States District Judge